IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                       Criminal Action No. 5:11-CR-10

JORDAN LAUDERMILT,

    Defendant.

## REPORT AND RECOMMENDATION
## THAT DEFENDANT'S MOTION TO SUPPRESS BE GRANTED

### I. Introduction

A.     Background

Defendant is the only defendant in a one count indictment charging a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2) plus forfeiture allegation.

B.     Motion

Defendant's Motion to Suppress.[1]

C.     Recommendation

I recommend defendant's Motion to Suppress be **GRANTED** because once the residence was secured, exigent circumstances no longer existed to permit the authorities to seize evidence because the risks of officer safety or the safety of other individuals were minimized.

### II. Facts

Late on Sunday, February 27, 2011, the Ohio County, West Virginia, Sheriff's Department received a telephone call reporting a domestic disturbance involving a firearm.

---

[1] Doc. No. 24.

Deputies Brooks, Bise, Ernest, Costello and Moore responded to the dispatch. In addition, one of the deputies asked Sgt. Olejasz of West Liberty University campus police to respond because he was closer to the premises, 198 Justice Lane. The deputies arrived at the bottom of the driveway of the above premises and approached on foot without flashlights. Moore, Costello and Olejasz were carrying shotguns.

Outside the premises were Shannalee Kuri, Defendant's girlfriend, and the complaining witness, her brother and father. Kuri said Defendant was inside the house in possession of a rifle. Defendant came outside once and went back in the house. It was the plan by the deputies that if Defendant came out again unarmed, the deputies would take Defendant into custody. Defendant, who was never seen in possession of the rifle by any of the officers, came outside and made threats directed at Kuri. The deputies announced their presence and took Defendant into custody. Some officers stayed with Defendant and some entered the house for a protective sweep to see if anyone else was in the house and armed. After the officers entered the house, they were advised Defendant's half brother, whom Defendant described as a fourteen year old autistic boy, was in the house. The officers began the sweep. Defendant's half brother "Pritt" was located on an upper floor. Pritt was escorted down the stairs by a deputy. Pritt, by his own description was "freaked out." The officers continued the sweep of the house. At some point, although the chronology is not clear. Sgt. Olejasz calmed Pritt and Deputy Bise asked Pritt where the firearm was. Pritt walked down the hall from the kitchen and pointed out the firearm. Deputy Bise took possession of the firearm. The officers did not discover the firearm during their protective sweep of the house.

III.  Defendant's Motion to Suppress

A. Contentions of the Parties

Defendant moves this Court to suppress evidence obtained on February 27, 2011.  In support of his Motion to Suppress, Defendant argues the evidence, specifically a firearm, must be suppressed because it was "obtained in violation of Defendant's constitutional rights under the Fourth Amendment." See Def.'s Mot. to Suppress, Pg. 1 (Dkt. 24).  Defendant contends that while the Fourth Amendment permits a "properly limited protective sweep in conjunction with an in-home arrest," that "the protective sweep here exceeded the limited nature of the search legally permissible under Supreme Court and Fourth Circuit precedent." Id. at 2-3.  Specifically, Defendant argues that he was taken into custody outside of the home and reported to the police that his 14-year-old half-brother, "Pritt," was the sole remaining individual in the house.  The police then reentered the home "to secure it, going room by room through the house," "located [Defendant's] brother in an upstairs bedroom" "then escorted [Defendant's] brother out of the residence." Id. at 4.  Defendant maintains "[u]pon clearing the house of contacts, there remained no legitimate reason for the police to go back into the residence" and, thus, the police should have obtained a search warrant for the residence. Id.

In opposition, the Government argues the firearm, recovered on February 27, 2011, was properly seized and should not be suppressed.  The Government contends the officers "clearly had a reasonable and articulable belief that [D]efendant had very recently been in possession of a rifle; that he had made numerous threats to the victims while possessing the rifle; that after he exited the residence and was arrested he was not in possession of the firearm; and, finally that a 14 year old autistic boy was still inside the residence (where the rifle was located)." See Pl.'s

Resp., Pg. 5 (Dkt. 28). The warrantless search of Defendant's residence, the Government argues, was objectively reasonable and is not grounds to suppress the recovered firearm.

B.  Discussion

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. CONST. amend. IV. "It is a 'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" Groh v. Ramirez, 540 U.S. 551, 559 (2004) (quoting Payton v. New York, 445 U.S. 573, 586 (1980)). "Nevertheless, because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." Brigham City v. Stuart, 547 U.S. 398, 403 (2006). Specific exceptions to the warrant requirement of the Fourth Amendment permit officers to enter private property to prevent the imminent destruction of evidence Ker v. California, 374 U.S. 23, 40 (1963), to engage in "hot pursuit" of a fleeing suspect United States v. Santana, 427 U.S. 38, 42-43 (1976), or to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. Mincey v. Arizona, 437 U.S. 385, 392 (1978). "[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." Mincey, 437 U.S. at 393-394. "An action is 'reasonable' under the Fourth Amendment...'as long as the circumstances, viewed objectively, justify [the] action.'" Brigham City v. Stuart, 547 U.S. 398, 403 (2006) (quoting Scott v. United States, 436 U.S. 128, 138 (1978)).

In the present case, both parties emphasize "reasonableness" as the touchstone of the Fourth Amendment. As such, the United States Supreme Court requires that a court ask only

whether the circumstances, viewed *objectively*, justify the action.  The Court finds that, while the officers' initial entry and protective sweep of the residence was plainly reasonable under the circumstances, the seizure of the firearm, when viewed objectively, is not justified by the circumstances facing the officers at that time.  Defendant was taken into custody outside of the residence and the deputies were informed that at least one other individual was still present in the home where the firearm remained.  Rightfully so, the deputies performed a protective sweep of the residence and located Defendant's fourteen-year-old autistic brother in an upstairs bedroom.  It is important to note that the protective sweep, which continued throughout the home, did not produce the location of the firearm Defendant was allegedly brandishing earlier in the night.  The Government argues that the "officers clearly had a reasonable and articulable belief that defendant had very recently been in possession of a rifle...that after [Defendant] exited the residence and was arrested he was not in possession of the firearm...and [] a 14 year old autistic boy was still inside the residence (where the rifle was located)".  See Def.'s Resp., Pg. 5 (Dkt. 28).  While these circumstances justified the initial entry into the home to locate any unaccounted for individuals that remained in the residence, the circumstances did not permit the officers to seize the firearm because the residence had been secured.  After the protective sweep, the police officers had all individuals in the home that night either in police custody or under police control thereby negating any exigent circumstances argument.  The Government's argument of officer safety or the safety of other individuals is weakened because while the firearm was not secured, the home, and therefore access to the firearm, was.  The Court declines to find exigent circumstances existed after the police had secured the residence.  Accordingly, it

5

is recommended Defendant's Motion to Suppress the firearm seized on February 27, 2011 be **<u>GRANTED</u>**.

C.      <u>Recommendation</u>

For the foregoing reasons, I recommend Defendant's Motion to Suppress be **<u>GRANTED</u>**.

Because trial is imminent, any written objection to this Report and Recommendation must be filed by Friday, June 3, 2011 by noon with the Clerk of the Court identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

DATED: May 31, 2011                           /s/ *James E. Seibert*
                                              JAMES E. SEIBERT
                                              UNITED STATES MAGISTRATE JUDGE