IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                             Civil Action No. 5:11CR10
                                                                      (STAMP)

JORDAN LAUDERMILT,

      Defendant.

**MEMORANDUM OPINION AND ORDER
AFFIRMING AND ADOPTING REPORT AND
RECOMMENDATION OF MAGISTRATE JUDGE AND
GRANTING DEFENDANT'S MOTION TO SUPPRESS**

I.  Procedural History

The defendant in the above-styled criminal action, Jordan Laudermilt, is the only defendant in a single-count indictment charging him as a prohibited person in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The indictment also includes a forfeiture allegation. On May 6, 2011, the defendant filed a motion to suppress evidence obtained on the day of his arrest in violation of his constitutional rights under the Fourth Amendment. The United States filed a timely response to this motion, to which the defendant replied.

United States Magistrate Judge James E. Seibert issued a report and recommendation on May 31, 2011, recommending that the defendant's motion to suppress be granted. The magistrate judge concluded that because the defendant's residence had been secured and the risk to officer safety minimized, exigent circumstances no

longer existed to permit the authorities to seize evidence.  The magistrate judge informed the parties that if they objected to any portion of his recommendation, they may file written objections by June 3, 2011.  The United States filed objections to the report and recommendation on June 3, 2011, and the defendant filed a response to these objections on June 6, 2011.  For the reasons set forth below, this Court agrees with the magistrate judge's findings and, accordingly, will overrule the United States' objections, affirm and adopt the magistrate judge's report and recommendation in its entirety, and grant the defendant's motion to suppress.

## II.  Facts

On February 27, 2011, the Ohio County, West Virginia Sheriff's Department received a telephone call reporting a domestic disturbance involving a firearm at the home of the defendant.[1]  Deputy Branden Brooks, Deputy Roger Bise, Sergeant Douglas Ernest, Deputy Costello, and Deputy Moore responded to the dispatch.  Sergeant Joseph Olejaz, a police officer at nearby West Liberty University, was also asked to respond because he was the closest unit to the disturbance.  The officers arrived at the bottom of the defendant's driveway and approached the house on foot.

Outside the premises stood Shannalee Kuri, the defendant's girlfriend and the complaining witness, as well as her brother and

---

[1] The defendant's home is located at 198 Justice Lane, Wheeling, West Virginia.

her father. According to these witnesses, the defendant was inside the house with a gun. While observing the defendant's residence from the cover of trees near the house, Deputy Costello, Sergeant Olejaz, Deputy Moore, Deputy Brooks, and Deputy Bise formed a plan to take the defendant into custody as soon as they observed him come back outside empty-handed. The defendant, who was never seen in possession of a firearm by any of the officers, came outside and made threats directed at a member or members of the Kuri family. The deputies then announced their presence, took the defendant into custody, and placed him in handcuffs.

Deputy Costello, Deputy Brooks, Deputy Moore, and Sergeant Ernest then entered the house to conduct a protective sweep, while Sergeant Olejaz stayed outside with the defendant. After entering the house, Deputy Brooks, Deputy Costello, Deputy Moore, and Sergeant Ernest were advised that the defendant's fourteen-year-old, autistic half-brother was inside. Deputy Bise was aware, prior to entering the house, that the only other person in the house was the defendant's half-brother.[2] (Tr. Mot. to Suppress Hr'g 22.)

The officers began the protective sweep. Shortly thereafter, Deputy Costello located the defendant's half-brother, J. Lee Pritt ("Pritt"), in a bedroom on the upper floor. After finding Pritt,

---

[2]Deputy Bise remained in the kitchen during the protective sweep.

Deputy Costello yelled to Sergeant Ernest, who was searching the other side of the house, that he had found the boy. (Tr. Mot. to Suppress Hr'g 58.) Sergeant Ernest and Deputy Brooks continued to clear the house, and then returned downstairs to find Pritt and Deputy Bise sitting at the kitchen table. Deputy Moore, who had also been conducting a protective sweep of the second floor, observed Deputy Costello bring Pritt downstairs. (Tr. Mot. to Suppress Hr'g 74-75.) After being escorted downstairs by Deputy Costello, Pritt was admittedly upset. Sergeant Olejaz, after putting the defendant in the police cruiser, came inside the house to talk to Pritt and calm him down. In the kitchen, Deputy Bise asked Pritt where the gun was located. (Tr. Mot. to Suppress Hr'g 22). Pritt then walked to a smaller room off the kitchen and reached for a rifle on a gun rack on the wall. Deputy Bise told Pritt to stop, and Bise then removed the gun from the wall.[3] Deputy Bise and Sergeant Olejaz stayed with Pritt until his mother arrived.

### III. Applicable Law

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a de novo review of any portion of the magistrate judge's recommendation to which objection is timely made. As to those

---

[3] Pritt testified that when asked where the gun was, he informed Deputy Bise that he didn't know. He then walked into the hallway leading to the bathroom and saw the gun hanging on a gun rack. He pointed to the gun and Deputy Bise retrieved it.

4

portions of a recommendation to which no objection is made, a magistrate judge's findings and recommendation will be upheld unless they are "clearly erroneous." See Webb v. Califano, 468 F. Supp. 825 (E.D. Cal. 1979). Because the United States filed timely objections, this Court reviews de novo the magistrate judge's report and recommendation.

## IV. Discussion[4]

In his motion to suppress, the defendant argues that the firearm obtained by the officers on February 27, 2011 must be suppressed because it was obtained in violation of his constitutional rights under the Fourth Amendment. Specifically, the defendant contends that upon clearing the house of contacts, there remained no legitimate reason for the police to continue the search. Because the suspect was in custody and Pritt had been secured, the defendant argues that there was no longer a threat to the officers' safety or the safety of other individuals. According to the defendant, the continued search of the residence after it was secured and the danger minimized was not justified by consent,

---

[4]Because the government's objections were filed on June 3, 2011 and jury selection and trial in this case are scheduled to commence on June 14, 2011, the Court has deemed it necessary to its ruling to obtain a transcript of the hearing before Magistrate Judge Seibert. That transcript could only be obtained in draft form, thus, the citations that appear in this opinion reference the rough draft of the transcript. When the final transcript is filed this Court will prepare and file an amended memorandum opinion which will cite to the pages of the final transcript.

5

a search warrant, or any exception to the requirements of a search warrant.

In response, the government argues that under the circumstances, the officers had a reasonable and articulable belief that: (1) the defendant had very recently been in possession of a rifle; (2) the defendant had made numerous threats to the victims; (3) the defendant was not in possession of a firearm when he was arrested outside the residence; and (4) a young boy was still inside the residence, where a firearm may still be located. The government points to these facts and argues that the officers had a right to enter the premises and conduct a protective sweep. Because the officers were lawfully on the premises and were advised by Pritt as to where the firearm was located, the United States contends that their actions were well within reason and the law.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. It has been construed to mean that "[a]bsent exigent circumstances, [the] threshold [of one's house] may not reasonably be crossed without a warrant." Payton v. New York, 445 U.S. 573, 590 (1980). Generally, a warrant is required to conduct a search of a person's home, but a warrantless search may be conducted when "'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable

6

under the Fourth Amendment." Mincey v. Arizona, 437 U.S. 385, 393-94 (1978) (quoting McDonald v. United States, 335 U.S. 451, 456 (1948)). Exigent circumstances justify a warrantless search when an officer would have an objectively reasonable belief that an emergency existed that required immediate entry to render assistance or prevent harm. United States v. Moss, 963 F.2d 673, 678 (4th Cir. 1992). Because the officers in this case did not have a warrant to search the defendant's house, in order to prevail, the government must establish the applicability of one of the limited exceptions to the warrant requirement. See Welsh v. Wisconsin, 466 U.S. 740, 749-50 (1984) (stating that the government bears the burden of demonstrating that exigent circumstances existed to overcome the presumption of unreasonable search and entry).

One of those exceptions is the "protective sweep." "'A protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." Maryland v. Buie, 494 U.S. 325, 327 (1990). The United States Supreme Court held in Buie that,

> as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts

7

> which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

Id. at 334. The Supreme Court warned that the sweep must be "no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." Id. at 341.

This Court agrees with the magistrate judge's finding that the defendant's recent possession of a rifle, his threatening demeanor, and the fact that his younger half-brother was still inside are circumstances that justified the initial entry into the home to locate any unaccounted for individuals and to ensure the safety of the officers. However, these circumstances did not permit the officers to seize the firearm after the residence had been secured and the protective sweep had ended. The key inquiry -- the determination of when the protective sweep ended -- requires a detailed review of the facts.

All of the officers who conducted the protective sweep, with the possible exception of Sergeant Ernest, who expressed some confusion regarding the reporting of who was in the residence, were aware that the only person in the house was the defendant's younger half-brother. (Tr. Mot. to Suppress Hr'g 7-8; 26; 64; 74.) Thus, when Pritt was located and secured, the protective sweep ended. See United States v. Colbert, 76 F.3d 773, 777 (6th Cir. 1996) ("The facts upon which officers may justify a Buie protective sweep

8

are those facts giving rise to a suspicion of danger from attack by a third party during the arrest[.]"). At the hearing on the motion to suppress, Deputy Bise confirmed that the defendant informed him that the only other person in the house was Pritt. (Tr. Mot. to Suppress Hr'g 26.) Thus, Deputy Bise was aware that the house was secure when Pritt was brought downstairs to the kitchen. Yet Deputy Bise posed his question regarding the location of the firearm after Pritt had been escorted downstairs by Deputy Costello. Even assuming that some of the officers sweeping the upper floor of the house were unaware that Pritt had been found, it is Deputy Bise's knowledge that is key. See United States v. Moses, 540 F.3d 263, 273 (4th Cir. 2008) ("In ascertaining whether a 'reasonable officer' would have found that an urgency existed, we focus on the officers' knowledge in the moments prior to commencing the search."). From the perspective of Deputy Bise, a suspicion of danger could not have existed after Pritt was secured; therefore, the protective sweep had ended prior to Bise locating and seizing the firearm. Based on his testimony and the testimony of the other officers, it would be unreasonable to assume that Deputy Bise believed there to be another individual posing a danger to those on the scene that would justify continuing a protective sweep after Pritt had been secured.

In its objections, the United States argues that the protective sweep continued upstairs while Pritt advised the

9

officers of the firearm's presence and location downstairs. But the government overlooks the fact that it was Deputy Bise, located downstairs, who sought information about the firearm only after Pritt had been secured and who was aware that there were no other persons in the house who posed a danger to the officers. By the time Pritt was escorted to the kitchen, all "reasonable suspicion of danger" had been objectively dispelled. Buie, 494 U.S. at 341. It follows that the protective sweep ended at that time, and that the firearm was improperly seized. This Court finds that the continued warrantless search of the house, which eventually yielded the firearm, exceeded the narrow scope of a search allowed under Buie. Accordingly, the firearm is not admissible under the theory of a protective sweep.

The series of events that are the subject of this motion to suppress present a situation in which conscientious law enforcement officers are working under potentially dangerous conditions and circumstances requiring action over a short period of time. However, as noted above, the federal law on search and seizure permits warrantless searches only under limited circumstances. When those circumstances do not exist or cease to exist, a search warrant must be obtained.

## V. Conclusion

For the reasons stated above, this Court hereby OVERRULES the United States' objections and AFFIRMS and ADOPTS the magistrate

10

judge's report and recommendation in its entirety. Accordingly, the defendant's motion to suppress is GRANTED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the defendant and to counsel of record herein.

DATED:    June 10, 2011

<u>/s/ Frederick P. Stamp, Jr.</u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE