IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

      Plaintiff,

versus                                                              Case Number 5:11-CR-10

JORDAN LAUDERMILT,

      Defendant.

MOTION FOR A NEW TRIAL

      Comes now Jordan Laudermilt, the defendant in the above-styled matter, by Stephen D. Herndon, his counsel, and respectfully requests, pursuant to Rule 33(b)(2) of the Federal Rules of Criminal Procedure, that this Honorable Court grant him a new trial on the grounds that his conviction was tainted by the admission of hearsay in violation of Rule 802 of the Federal Rules of Evidence and by the admission of extremely prejudicial evidence regarding the call-out of a SWAT or S.R.T. team that was not relevant to any issue at trial.

STATEMENT OF FACTS

      In its case-in-chief the government elicited two different strands of hearsay evidence without objection by counsel for the defendant. Both strands were persuasive indicators of elements of the offense albeit inadmissible hearsay.

      Joseph R. Olejasz was employed as a police officer by West Liberty University. On the night of February 27, 2011, he responded to a 911 call by traveling to 198 Justice Lance. In response to a direct question by the government's attorney, Officer Olejasz testified that he was advised that an active domestic incident was occurring involving a firearm and Jordan Laudermilt. Trial counsel for Mr. Laudermilt did not object. (2/15/2011 Trial Transcript at pp. 31-32).

Officer Olejasz repeated the testimony that dispatch had informed him that a weapon was involved in response to a question by the government's attorney. Once again, there was no objection by trial counsel. (2/15/2011 Trial Transcript at p. 34).

The government called Deputy Sheriff George J. Costello. Deputy Costello testified in response to a direct question by the government's attorney, Deputy Costello testified that l enforcement had received a call involving a firearm and Jordan Laudermilt. There was no objection by defense counsel. (2/15/2011 Trial Transcript at pp. 47-48).

Later in his testimony, Deputy Costello testified in response to a question by the government's attorney that he had not heard what type of firearm might be involved but heard that it was a rifle or shotgun. Again, there was no objection by defense counsel. (2/15/2011 Trial Transcript at p. 49).

The government called Deputy Sheriff Chester R. Bise. Deputy Bise testified in response to a direct question by the government that he responded to a call over the radio about a domestic involving Jordan Laudermilt with a gun. There was no objection by defense counsel. (2/15/2011 Trial Transcript at p. 67).

Later in his testimony, Deputy Bise testified in response to a question by the government's attorney that the radio transmission involved possession of a gun. Again, there was no objection by defense counsel. (2/15/2011 Trial Transcript at p. 68).

The government called Deputy Joshua A. Moore. Deputy Moore testified in response to a direct question by the government that he responded to a call over the radio about a domestic with a gun. There was no objection by defense counsel. (2/15/2011 Trial Transcript at p. 86).

The government called Deputy Brandon J. Brooke. Deputy Brooke testified in response to a direct question by the government that he responded to 198 Justice Lane as a result of a call over the radio about a domestic. The radio call later described the domestic as involving a suspect pointing a gun at a female. There was no objection by defense counsel. (2/15/2011 Trial Transcript at pp. 112-113).

The government called Deputy Douglas S. Ernest. Deputy Ernest testified in response to a direct question by the government that he responded to 198 Justice Lane as a result of a call over the radio about a domestic between Jordan Laudermilt and Shannalee Kuri. The radio call later described the domestic as involving a firearm that was possibly a shotgun. There was no objection by defense counsel. (2/15/2011 Trial Transcript at pp. 129-130).

Deputy Ernest also testified in response to a directed line of questions that he as a member of the Ohio County Sheriff's SWAT team. He further testified that he called the SWAT team leader in order to acquire a decision about whether or not to call the SWAT team out to respond to 198 Justice Lance. There was no objection by defense counsel. (2/15/2011 Trial Transcript at p. 130).

STATEMENT OF LAW

The United States Supreme Court has in reasonably recent times addressed the admission of hearsay as a violation of the confrontation clause in the context of a malicious assault case involving a minor. The United States Supreme Court held that "testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant had a prior opportunity to cross-examine." **Crawford v. Washington**, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed. 2d 177(2004). This holding was affirmed in **Michigan v. Bryant**, 131 S.Ct. 1143, 179 L.Ed. 2d 93 (2011).

Under this holding, if the statement is testimonial in nature, it is admissible only if the declarant is unavailable and if the defendant had a prior opportunity to cross-examine. "Where testimonial statements are at issue, the only indicia of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." **Crawford v. Washington**, supra.

As the evidence offered is testimonial, **Crawford v. Washington**, supra controls, and mandates exclusion. The same result would be reached by traditional hearsay rules which are still applicable.

Rule 802 of the Rules of Civil Procedure provides as follows:

"Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress."

The testimony, on no less than nine occasions, that officers were advised by dispatch that a domestic was in progress involving Jordan Laudermilt is hearsay. It is not subject to the traditional guarantees of reliability rendering it of little or no probative value.

In general, the admission of evidence is subject to admission with some confidence due to three safeguards - the oath, cross-examination, and the requirement that witnesses attend and testify in open court. **Maryland v. Craig**, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed. 2d 666 (1990).

In general out of court statements are not admissible in evidence as being prohibited by the hearsay rule. In the case at bar, the testimony is not mere hearsay but double hearsay as it relates information from officers who were told by dispatch who received the information from

some other source. **United States v. Brown**, 767 F.2d 1078 (CTA4 1985); **United States v. Melia**, 691 F.2d 672 (CTA4 1982); See also **Flores v. United States**, 551 F.2d 1169 (CTA9 1977).

If the testimony were not hearsay and double hearsay, its admission would still be inadmissible under Rule 403 of the Rules of Evidence.

In considering the balance required by Rule 403, the trial Court should consider the reliability of the evidence and the <u>necessity</u> of the evidence. **United States v. Bailey**, 990 F.2d 119 at 122 (4th Cir. 1993); **United States v. Mark**, 943 F.2d 444 at 447 (4th Cir. 1991); **United States v. Rawle**, 845 F.2d 1244 at 1247 (4th Cir. 1988); **United States v. Greenwood**, 796 F. 2d 49 (4th Cir. 1986); **United States v. Hadaway**, 681 F.2d 214 (4th Cir. 1982); and **United States v. Masters**, 622 F.2d 83 (4th Cir. 1982).

Although most courts address Rule 403 balancing tests under the unfair prejudice analysis, that is only one part of Rule 403 of the Federal Rules of Evidence. Rule 403 of the Federal Rules of Evidence provides as follows:

> "Although relevant, evidence may be excluded it its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by the consideration of undue delay, waste of time, or needless presentation of cumulative evidence."

Most of the issues considered in Rule 403 of the Rules of Evidence are considerations in the case at bar.

The evidence has little or no probative value. It is highly prejudicial as it repeats time after time that the officers were told that Jordan Laudermilt had a firearm in his possession.

Inasmuch as it was repeated time and again, it was unduly cumulative.

The hearsay issue is complicated by the testimony of Deputy Ernest that he called Deputy Matt Moore to secure a decision on whether or not to call out the SWAT team.
That testimony does not tend to make a fact in issue more or less likely. Accordingly, it is not relevant evidence. Rule 402 of the Federal Rules of Evidence provides that relevant evidence is admissible and irrelevant evidence is not admissible. The testimony of Deputy Ernest that he called Deputy Matt Moore to secure a decision on whether or not to call out the SWAT team was not relevant evidence and should have been excluded,

Even if it were relevant evidence, it should have been excluded because its prejudicial impact unfairly outweighed its probative value mandating exclusion under Rule 403 of the Federal Rules of Evidence.

CONCLUSION

In the case at bar, the only government witnesses to place a firearm in the hands of Jordan Laudermilt were Shannalee Kuri and John Kuri, Sr. John Kuri, Jr. was present during the entire interaction between Shannalee Kuri and Jordan Laudermilt on February 27, 2013.  John Kuri, Jr. testified that he never saw Jordan Laudermilt with a firearm in his possession.

Shannalee Kuri recanted her testimony in several letters. She testified that she was high and could not recall all of the events of February 27, 2013. She was unable to conclusively identify the firearm seized from 198 Justice Lane. Just before her second day of testimony, she consumed significant amounts of alcohol and cocaine.

John Kuri, Sr. not only was unable to conclusively identify the firearm seized from 198 Justice Lane, he denied that the firearm seized from 198 Justice Lane was the one that he saw in Jordan Laudermilt's possession. His description of loading that weapon made it sound like a shotgun and certainly not like a Ruger 10/22.

With the uncertainty in the testimony of the government's witnesses and the vulnerability of their testimony to challenge, the repetitive hearsay combined with the SWAT team testimony assumes great importance.  It bolsters their testimony by informing the jury that law enforcement thought that Jordan Laudermilt had a firearm and were planning extreme measures to deal with the situation.

The hearsay and irrelevant evidence mandates the grant of a new trial,

                Respectfully submitted,
                Jordan Laudermilt,
                By counsel.

Prepared by:
/S/Stephen D. Herndon
WV State Bar I.D. 1692
76 Fifteenth Street
Wheeling, West Virginia 26003
304-232-6330

## **CERTIFICATE OF SERVICE**

    Stephen D. Herndon hereby certifies that he served true copies of the attached pleading on the parties on this 2d day of May 2013, electronically.

                              /S/  Stephen D. Herndon